1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8   ANTHONY LOUIS PELLIGRINI,        )
                                     )
9          Petitioner,               )
                                     )      No.  CV 05-506-TUC-CKJ
10  vs.                              )
                                     )
11  IVAN BARTOS, et al.,             )              **ORDER**
                                     )
12         Respondents.              )
    _____ )

13

14        Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus by a

15  Person in State Custody Pursuant to 28 U.S.C. § 2254.  Respondents have filed an

16  Answer and Petitioner has filed a Traverse.

17

18  *Factual and Procedural Background*

19        The Court of Appeals of Arizona stated the facts[1] as follows:

20        . . . In early 1997, three Tucson-area banks were robbed by a young white male
      who entered each bank and ordered the customers to lie down on the floor while
21    pointing a pistol-gripped shotgun.  The man then approached the tellers, pointed
      the gun at them, and demanded money.  No witnesses saw the vehicle used in the
22    first robbery.  After the second, witnesses saw the robber enter the passenger door
      of an older, dark blue Chevrolet Camaro with black louvers on the back window.
23    After the third robbery, witnesses also saw the robber enter an older, dark blue
      Camaro with louvers, noted the car's license plate number, and gave a description
24    of the driver.  Police traced the license number to a Camaro registered to
      Pelligrini.

25

26        _____

27        [1]As these state court findings are entitled to a presumption of correctness and
      Pelligrini has failed to show by clear and convincing evidence that the findings are
28    erroneous, the Court hereby adopts these factual findings. *See Wainwright v. Witt*, 469 U.S.
      412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985), and 28 U.S.C. § 2254(e)(1).

1

2

3

4

5

6

The police contacted Pellegrini a short time later who said he had recently sold the Camaro to a coworker, Rhonda Wederski, and he game them her address.  Police officers found Wederski and took her to the main station of the Sheriffs Department where she initially denied that anyone else had driven the car that day. After a detective threatened she would be separated from her child if she were convicted of robbery, she admitted that Pellegrini had driven the car that afternoon, and said she had lied earlier because she was afraid of Pellegrini and his threats that the Mafia would retaliate against "anybody that rats on him." Wederski also stated that Pellegrini had left a purple gym bag containing some shotgun shells at her home.  The robber carried a purple gym bag during the first robbery and used a shotgun in all three.

7

8

9

10

11

After obtaining a search warrant for the Camaro and Wederski's apartment, Detective Hock went to the University of Arizona police station to interview Pellegrini at 11:15 p.m.  Pellegrini denied any involvement in the robberies. Because Pellegrini's appearance was consistent with the witnesses' description of the robber and based on Wederski's statement, the witnesses' description of the Camaro, the Camaro's being registered to Pellegrini, and his possession of white latex gloves similar to those worn by the robber, Hock arrested him for armed robbery.

12

13

14

15

A telephonic search warrant was obtained for Pellegrini's apartment and the car he had been driving, a 1992 Acura, which was executed that night because police had seen movement in Pellegrini's apartment and were concerned that evidence would be lost or destroyed.  In the Acura, police found large sums of currency in the ashtray and trunk, including "bait money" from the third robbery, and recovered a shotgun with a pistol grip, matching the description of the weapon used in the robberies.

16

17

18

19

A grand jury indicted Pellegrini on seven counts of armed robbery, one count of attempted armed robbery, three counts of theft by control, and twenty-seven counts of aggravated assault with a deadly weapon.  After a two-day evidentiary hearing, the trial court denied Pellegrini's motions to suppress the evidence seized from his apartment and the Acura and his statement to police and evidence resulting therefrom.  Of the thirty-eight counts on which Pellegrini stood trial, the jury convicted him of twelve and was unable to reach a verdict on seven.  The remainder were dismissed with prejudice on the state's motion.

20

Respondents' Exhibit C, pp. 2-4.

21

22

The trial court sentenced Pellegrini to a twenty-one (21) year term of imprisonment.

23

24

25

26

27

Pellegrini appealed his convictions and sentences to the Court of Appeals of Arizona.  On November 16, 2000, the Court of Appeals affirmed Pellegrini's convictions. Pellegrini's sentence on count thirty-three was vacated because the charge was dismissed with prejudice during the trial; the remainder of Pellegrini's sentences were affirmed. Pellegrini's petition for review to the Supreme Court of Arizona was denied.

28

Pellegrini filed a Petition for Post-Conviction Relief pursuant to Ariz.R.Crim.P.

32 on March 27, 2002. Pellegrini asserted that trial counsel was ineffective. The Rule 32 court found that counsel's conduct did not fall below reasonable professional standards and Pellegrini had failed to demonstrate that he had been prejudiced from counsel's alleged deficiencies. The Rule 32 court summarily denied the Petition for Post-Conviction Relief.

Pellegrini petitioned for review to the Court of Appeals of Arizona. The Court of Appeals agreed with the Rule 32 court that Pellegrini had failed to demonstrate prejudice. On August 19, 2004, the Supreme Court of Arizona denied review.

On August 17, 2005, Pellegrini filed this Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254. In his first claim for relief, Pellegrini asserts that his rights against an unreasonable search and seizure were violated and that, by the use of the fruits of an illegal search at trial, his right to due process and a fair trial were violated. In his second claim for relief, Pellegrini asserts that trial counsel provided ineffective assistance. Respondents have filed an Answer and Pellegrini has filed a Traverse.

*Standard of Review*

Federal courts may consider a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296, 129 L.Ed.2d 271 (1994). Indeed, a habeas corpus petition by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated a

1  petitioner's Fourteenth Amendment right to due process.  *See generally, Estelle v.*
2  *McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

3        This Court must review claims consistent with the provisions of the Antiterrorism
4  and Effective Death Penalty Act of 1996 ("AEDPA").  "The Act limits the ability of
5  federal courts to reexamine questions of law and mixed questions of law and fact."
6  *Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997).  This Court may only overturn a
7  state court finding if a petitioner shows by clear and convincing evidence that the finding
8  was erroneous.  *See* 28 U.S.C. § 2254(e)(1).  An "unreasonable application of clearly
9  established law" exists if the state court identified the correct governing legal principle
10  from Supreme Court decisions but unreasonably applied that principle to the facts of the
11  case.  *See Taylor.*

12

13  *Statute of Limitations*

14        Under the AEDPA, a state prisoner must generally file a petition for writ of habeas
15  corpus within one year from the date upon which his judgment became final or the
16  expiration of time for seeking such review.  *See* 28 U.S.C. § 2244(d)(1)(A).  "The time
17  during which a properly filed application for state post-conviction or other collateral
18  review with respect to the pertinent judgment or claim is pending shall not be counted
19  toward any period of limitation[.]"  28 U.S.C. § 2244(d)(2).  Respondents do not dispute
20  the timeliness of Pellegrini's Petition.  Based on a review of the record, the Court finds
21  that the Petition is timely under 28 U.S.C. § 2244(d)(1)(A).

22

23  *Exhaustion of State Remedies*

24        Before a federal court may review a petitioner's claims on the merits, a petitioner
25  must exhaust his state remedies, i.e., have presented in state court every claim raised in
26  the federal habeas petition.  *See Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct.
27  2546, 115 L.Ed.2d 640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct.
28  1728, 1732, 144 L.Ed.2d 1 (1999) (a state prisoner in a federal habeas action must

exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).  Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004), *internal quotation marks and citations omitted*.

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals.  A discretionary petition for review to the Supreme Court of Arizona is not necessary for purposes of federal exhaustion.  *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).  A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  In state court, the petitioner must describe not only the operative facts but also the asserted constitutional principle.  The United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).  A petitioner does not ordinarily "fairly present" a federal claim to a state court if that court must read beyond a petition, brief, or similar papers to find material that will alert it to the presence of a federal claim.  *See e.g., Baldwin*, 541 U.S. at 33 (rejecting contention

that petition fairly presented federal ineffective assistance of counsel claim because "ineffective" is a term of art in Oregon that refers only to federal law claims since petitioner failed to demonstrate that state law uses "ineffective assistance" as referring only to federal law rather than a similar state law claim); *Harless*, 459 U.S. at 6 (holding that mere presentation of facts necessary to support a federal claim, or presentation of state claim similar to federal claim, is insufficient; petitioner must "fairly present" the "substance" of the federal claim); *Hivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds), *cert. denied*, 529 U.S. 1009 (2000); *Gatlin v. Madding*, 189 F.3d 882 (9th Cir. 1999) (holding that petitioner failed to "fairly present" federal claim to state courts where he failed to identify the federal legal basis for his claim), *cert. denied*, 52 U.S. 1087.

*Procedural Default*

The Ninth Circuit Court of Appeals has explained the distinction between exhaustion and procedural default as follows:

> The exhaustion requirement is distinct from the procedural default rule. The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him. A federal claim that is defaulted in state court pursuant to an adequate and independent procedural bar may not be considered in federal court unless the petitioner demonstrates cause and prejudice for the default, or shows that a fundamental miscarriage of justice would result if the federal court refused to consider the claim.

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005), *internal quotation marks and citations omitted*. In other words, a habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in

- 6 -

1   federal court if it was actually raised in state court but found by that court to be defaulted

2   on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, the claim may be

3   procedurally defaulted in federal court if the petitioner failed to present the claim in a

4   necessary state court and "the court to which the petitioner would be required to present

5   his claims in order to meet the exhaustion requirement would now find the claims

6   procedurally barred." *Id*. at 735 n. 1. This is often referred to as "technical" exhaustion

7   because although the claim was not actually exhausted in state court, the petitioner no

8   longer has an available state remedy. *See id*. at 732 ("A habeas petitioner who has

9   defaulted his federal claims in state court meets the technical requirements for

10  exhaustion; there are no remedies any longer 'available' to him."). If a claim is

11  procedurally defaulted, it may not be considered by a federal court unless the petitioner

12  demonstrates cause and prejudice to excuse the default in state court, or that a

13  fundamental miscarriage of justice would result. *Id*. at 753; *Sawyer v. Whitley*, 505 U.S.

14  333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). If a claim has never been fairly presented

15  to the state court, a federal habeas court may determine whether state remedies remain

16  unavailable. *See Harris v. Reed*, 489 U.S. 255, 269-70, 109 S.Ct. 1038, 103 L.Ed.2d 308

17  (1989); *Teague v. Lane*, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989);

18  *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

19       Where an issue is procedurally defaulted as "waived at trial, on appeal, or in any

20  previous collateral proceeding" pursuant to Rule 32.2(a)(3), Ariz.R.Crim.P., the district

21  court must determine whether the claim is of "sufficient constitutional magnitude" to

22  require a knowing, voluntary, and intelligent waiver. *Cassett*, 406 F.3d at 622. Although

23  *Cassett* did not provide any guidance on the parameters of what claims would be of such

24  a "sufficient constitutional magnitude", it appears that the Supreme Court of Arizona

25  intended that a knowing, voluntary, and intelligent waiver is necessary only if the claim

26  is one that ordinarily requires personal waiver from a defendant, e.g., right to counsel or

27  right to jury trial. *See Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002).

28  If the claim is of such a sufficient constitutional magnitude, a determination must be made

1   whether a defendant waived the claim. *Cassett*, 406 F.3d at 622. The Ninth Circuit stated

2   that the "Arizona state courts are better suited to make these determinations, which may

3   require both a fact-intensive inquiry, and an application of Arizona's complex case law

4   on waiver." *Id.*

5

6   *Pellegrini's Fourth Amendment Claim*

7           Pellegrini asserts that the affidavit presented in support of the issuance of the

8   search warrant was based on statements made in reckless disregard for the truth.

9   Pellegrini presented this claim to the state trial court, to the Court of Appeals and to the

10  Supreme Court. Pellegrini has exhausted this claim. However, where a "State has

11  provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

12  prisoner may not be granted federal habeas corpus relief on the ground that evidence

13  obtained in a unconstitutional search or seizure was introduced at his trial." *Stone v.*

14  *Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976), footnote omitted. In this case,

15  Pellegrini's motion to suppress was denied in the trial court after a two-day evidentiary

16  hearing. Furthermore, the Court of Appeals reviewed Pellegrini's claims that the search

17  warrant was deficient because it failed to comply with the requirements for a telephonic

18  warrant, the police had not shown good cause for the nighttime execution of the warrant,

19  and the police improperly used Wederski's statements to establish probable cause. The

20  Court of Appeals found that the trial court did not err in denying Pellegrini's motion to

21  suppress the evidence found in his Acura and in his apartment. Pellegrini had a full and

22  fair opportunity to present his Fourth Amendment claim to the state courts and, therefore,

23  he is not entitled to federal habeas corpus relief on this ground. *Moormann v. Schriro*,

24  426 F.3d 1044, 1053 (9th Cir. 2005); *Villafuerte v. Stewart*, 111 F.3d 616, 627 (9th Cir.

25  1997).

26

27  *Pellegrini's Ineffective Assistance of Counsel Claims*

28          Pellegrini asserts that counsel was ineffective for:

- 8 -

1.    Failing to investigate, prepare, locate, and present an expert gunsmith or similar person with knowledge of the specifications of a Mossberg 500.

2.    Failing to investigate, interview, prepare, and present the testimony of Pellegrini's roommate, John Thompson.

3.    Failing to object to the admission of opinions concerning the identification of items used during the robberies.

4.    Failing to file pre-trial motions to preclude the use of purported mafia affiliation and an admission to Wederski that he had been involved in a bank robbery in Pennsylvania.

5.    Stipulating to the admission of photographs which included the time-stamps.

6.    Failing to move to sever the three robberies (and related charges) from one another.

7.    Failing to file a motion for disclosure of a realistic list of witnesses and exhibits and a possible motion to dismiss.

8.    Failing to voir dire and strike jurors which demonstrated bias or prejudice.

9.    Failing to adequately investigate, prepare and then engage in cross-examination of Wederski.

Petition, pp. 27-59.  Additionally, Pellegrini asserts he is entitled to a new trial because the cumulative effect of errors undermine confidence in the outcome.  Specifically, Pellegrini asserts the cumulative effect of counsel (1) failing to object to the accounting of the amounts taken from the bank, opinions of witnesses as to a description of the perpetrator, improper use of prior consistent statements, hearsay testimony regarding the security camera photos, allegation of the prosecutor that Pellegrini did not call Angelo Randazzo as a witness because Randazzo did not want to perjure himself, the prosecutor's improper comments,(2) stipulating to the foundation of the security camera photos, (3) for failing to adequately and thoroughly examine Ron Webb and establish a financial motive on his part for perpetration of the crimes warrants a new trial. Petition, pp. 61-71.

1   *Claims in Which State Remedies Have Been Exhausted*

2       In presenting claims to the Arizona Court of Appeals, Pellegrini specifically

3   asserted counsel was ineffective for failing to (1) file pre-trial motions to preclude the use

4   of purported mafia affiliation and an admission to Wederski that he had been involved in

5   a bank robbery in Pennsylvania, (2) move to sever the three robberies (and related

6   charges) from one another, (3) file a motion for disclosure of a realistic list of witnesses

7   and exhibits and a possible motion to dismiss, and (4) failing to strike some members of

8   the jury panel. Pellegrini fairly presented these claims to the state courts. *Baldwin*;

9   *Picard*, 404 U.S. at 275-78. Pellegrini has exhausted his state remedies as to these

10  claims. In denying relief on these claims, the state courts applied the *Strickland* standard.

11  To establish a claim of ineffective assistance of counsel, a petitioner must show that

12  counsel's actions fell below an objective standard of reasonableness and that Petitioner

13  was prejudiced by the alleged ineffective assistance of counsel. *Strickland v.*

14  *Washington*, 466 U.S. 668, 687, 104 S.Ct. 252, 2064 (1984). The Court must determine,

15  therefore, if the state courts unreasonably applied *Strickland. See Taylor*; *Bell v. Cone*,

16  535 U.S. 685, 699, 122 S.Ct. 1843, 1852 (2002).

17      As to Pellegrini's claim that counsel was ineffective for failing to properly utilize

18  the jury selection process, the Rule 32 court stated:

19      . . . Petitioner points to five seated jurors that he believes should have been
        stricken by trial counsel and argues that trial counsel's failure to strike these jurors
20      was ineffective assistance of counsel. This argument is not persuasive. Simply
        pointing to jurors that the Petitioner now believes should have been stricken does
21      not overcome the strong presumption that trial counsel's decision not to strike
        those particular jurors was sound trial strategy. Trial counsel had only six strikes
22      and used them to strike those jurors he felt, based on his experience, would be
        most detrimental to Petitioner's case. There is no indication that trial counsel's
23      failure to strike the five jurors was anything other than a tactical decision to get the
        most favorable jury possible. Trial counsel was able to observe the prospective
24      jurors throughout the entire *voir dire* process and made his decision based on more
        than simply what the jurors stated on the record. The selection of the jury was a
25      tactical decision and, thus, Petitioner has failed to prove deficient performance.

26  Respondents' Exhibit I, pp. 3-4.

27      As to Pellegrini's claims that counsel was ineffective for failing to file enumerated

28  motions, the trial court stated:

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12

Petitioner argues that trial counsel should have filed a motion for disclosure of a realistic list of witnesses and exhibits, a motion to dismiss counts relating to victims would not testify, a motion to preclude the use of purported Mafia affiliation and a motion to sever counts. Petitioner fails to demonstrate prejudice and, therefore, the 'court will not examine these claims with regard to deficient performance. The jury verdict clearly supports the contention that the jurors evaluated each and every charge separately and decided each charge on its own merits. The fact that the jury was unable to reach a verdict on seven of the twenty counts submitted to the jury refutes the Petitioner's contention that the sheer number of charges and the consolidation of the separate robberies into one trial prejudiced the Petitioner. If the Petitioner's contention were true and the admission of testimony concerning the mafia, consolidation of the charges, and the failure to dismiss counts concerning non-testifying victims prior to trial did prejudice the Petitioner, one would expect he prejudice to extend to all charges. The fact that the jury did not reach a verdict on Counts One, Two, Three, Four, Eight, Eleven and Twelve demonstrates that the jury did not use this information in an impermissible way and did decide each count on its own merits. The Petitioner has failed to demonstrate prejudice. Furthermore, Petitioner has failed to prove that these motions, if filed, would have been granted. It is likely that only the motion for a realistic witness list would have been granted and that, alone, is not enough to support an ineffective assistance of counsel claim. After all, this is not a case where trial counsel did not conduct any pre-trial motion practice; trial counsel did file substantive pre-trial motions, including a motion to suppress evidence.

13    Respondents' Exhibit I, pp. 4-5.

14          Although Respondents agree that Pellegrini has exhausted his state remedies as to

15    his claim that he is entitled to a new trial based on the cumulative effect of the alleged

16    deficient conduct of counsel, Respondents assert that Pellegrini's remaining claims of

17    ineffective assistance of counsel have not been exhausted. Pellegrini's claims were

18    included in the appendices to Pellegrini's Petition for Post-Conviction Relief and referred

19    to in the body of his Petition. Moreover, Pellegrini referred to his one-hundred seven

20    (107) claims of ineffective assistance of counsel in his petition for review. He

21    specifically argued that counsel was ineffective for failing to object and the cumulative

22    effect of that failure. Moreover, Pellegrini specifically argued that counsel was

23    ineffective by stipulating to the admission of photographs. The Court finds, therefore,

24    Pellegrini has exhausted his claims that counsel was ineffective for (1) failing to object

25    to the admission of opinions concerning the identification of items used during the

26    robberies, (2) failing to object to the accounting of the amounts taken from the bank, (3)

27    failing to object to opinions of witnesses as to a description of the perpetrator, (4) failing

28    to object to the improper use of prior consistent statements, (5) failing to object to hearsay

testimony regarding the security camera photos, (6) failing to object to the allegation of the prosecutor that Pellegrini did not call Angelo Randazzo as a witness because Randazzo did not want to perjure himself and to the prosecutor's improper comments, and (7) stipulating to the admission of photographs which included the time-stamps. Additionally, the Court agrees with Pellegrini and Respondents that Pellegrini has exhausted his state remedies as to his claim that he was entitled to a new trial due to the cumulative effect of specified deficiencies.

As to Pellegrini's claims that counsel was ineffective for failing to object at times during the trial and Pellegrini's claim regarding the cumulative effect of these claims, the trial court stated:

> Petitioner is incorrect. Trial counsel's performance with regard to raising or not raising objections at trial did not fall below the community standard. Attorneys often choose to limit their objections in an attempt to win favor with the jury and the judge or to diminish the effect the objectionable information will have in the jury's mind. Trial counsel in this case may have chosen not to make objections that could have been sustained but he chose to do so. Those types of decisions are within the purview of the trial counsel and are nothing more than tactical decisions. The making of such tactical decisions does not support a claim for ineffective assistance of counsel given the strong presumption that trial counsel's performance was reasonable.

Respondents' Exhibit I, p. 5.

As to Pellegrini's claim that counsel was ineffective for stipulating to the admission of photographs, the trial court stated:

> Petitioner is incorrect in this assertion. As stated above, the Court indulges a strong presumption that trial counsel's actions were reasonable at the time of trial. In the instant case, trial counsel may have known that the photographs were likely going to be admitted and, therefore, in an attempt to build rapport with the jury agreed to their admission. Trial counsel could have had any other number of reasons for stipulating to the admission to the photographs. Whatever his reason, trial counsel's stipulation to the admission of the photographs does not rise to the level of ineffective assistance of counsel. Furthermore, stipulating to the fact that there was no fingerprint evidence found does not indicate that the Petitioner was denied his right to the effective assistance of counsel. Stipulating to something that in no way prejudices one's defense is not grounds for an ineffective assistance of counsel claim. Entering into the stipulations was simply a tactical decision on the part of trial counsel and does not demonstrate deficient performance.

Respondents' Exhibit I, p. 5.

Pellegrini also asserted counsel was ineffective for failing to investigate, prepare,

- 12 -

locate, and present an expert gunsmith or similar person with knowledge of the specifications of a Mossberg 500; failing to investigate, interview, prepare, and present the testimony of Pellegrini's roommate, John Thompson, and; failing to object to the admission of opinions concerning the identification of items used during the robberies. These claims were included in the appendices to Pellegrini's Petition for Post-Conviction Relief and referred to in the body of his Petition. However, Pellegrini did not specifically argue counsel's ineffectiveness as to these claims. The Ninth Circuit has not addressed whether merely setting forth the claims, without argument in support of the claims, is sufficient to fairly present the claims. *See Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005) (claims were fully and fairly presented where petitioner presented extensive argument and authority in support of claims in appendix). Indeed, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32, 124 S.Ct. at 1351.

Pellegrini discussed claims of ineffective assistance of counsel, set forth the legal standard for establishing ineffective assistance of counsel under *Strickland*, and set forth the additional conduct that he believed was ineffective. Moreover, the state courts addressed the claims Pellegrini included in the appendices. The Court finds Pellegrini has fairly presented these claims to the Arizona courts. As previously stated, the trial court addressed the cumulative effect of trial counsel's failure to make objections throughout the course of the trial. The trial court also addressed whether Pellegrini had been prejudiced by any alleged deficient conduct:

> The physical evidence presented to the jury at Petitioner's trial for the three bank robberies was substantial. The police had connected the car used in at least two of the robberies to [Pellegrini], had found a gun matching the description of the one used in the robberies in [Pellegrini's] car and had found cash and bait money in the Petitioner's car. Trial counsel had to contend with this and other evidence and did so in a reasonable manner (seven counts did result in a mistrial and a subsequent dismissal with prejudice). There is nothing in the pleadings to support a finding of ineffective assistance of counsel.

1    Respondents' Exhibit I, p. 6.

2         Moreover, the Court of Appeals reviewed Pellegini's claims of ineffective

3    assistance of counsel, including the 107 claims set forth in the appendices, and stated:

4            Counsel's theory of defense was that [Pellegrini] had been framed for the crimes
             by two other persons who, like [Pellegrini] had had access to both the getaway car
5            and the car in which evidence from the robberies had been found. The majority of
             [Pellegrini's] proffered 107 instances of counsel's purported ineffectiviness were
6            irrelevant to this theory of defense. Counsel's performance at trial in regard to
             those claims was not inconsistent with his theory of defense and can therefore be
7            considered strategic. As for the remainder of the claims, [Pellegrini] failed to
             demonstrate that the result of the trial or sentencing would have been different had
8            counsel acted as petitioner now claims he should have. As the trial court found
             counsel's strategy was partially successful; on nine other counts, petitioner was
9            either acquitted or had the charges dismissed with prejudice.

10   Respondents' Exhibit K, pp. 2-3. This Court does not find that the state courts'

11   determination that Pellegrini failed to establish ineffective assistance of counsel was

12   objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. 685, 698-99, 122

13   S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (habeas court is not to make its own

14   independent judgment, but is to determine whether state court applied federal authority

15   in an objectively unreasonable manner). *Mancuso v. Olivarez*, 292 F.3d 939, 954 (9th

16   Cir. 2002) (strong presumption counsel's conduct falls within wide range of reasonable

17   professional assistance; counsel's decisions are not to be second-guessed to reconstruct

18   the circumstances of counsel's challenged conduct).

19

20   *Claim in Which State Remedies Have Not Been Exhausted*

21        In his petition for review to the Court of Appeals, Pellegrini referred to additional

22   questions that counsel should have asked during the cross-examination of Wederski.

23   However, Pellegrini did not argue that counsel's failure to adequately investigate, prepare

24   and then engage in cross-examination of Wederski constituted ineffective assistance of

25   counsel. Where Pellegrini did not argue to the appellate court that counsel was

26   ineffective in its cross-examination, Pellegrini cannot be said to have provided the state

27   courts with an opportunity to correct their own mistakes. *Baldwin*, 541 U.S. at 32, 124

28   S.Ct. at 1351. The Court finds Pellegrini did not fairly present this claim to the Court of

Appeals of Arizona and, therefore, has not exhausted his state remedies as to this claim. The Court must determine, therefore, whether this matter should be stayed to allow Pellegrini to exhaust his state remedies as to these issues or whether these issues are procedurally defaulted.

Pellegrini's right to direct review having been completed, Pellegrini would have to present these claims in an additional Petition for Post-Conviction Relief. Under Arizona law, a defendant who was convicted at trial must file a Notice of Post-Conviction Relief within 90 days of the entry of judgment and sentence or within 30 days of the order and mandate affirming the judgment and sentence on direct appeal, whichever is later. Rule 32.4(a), Ariz.R.Crim.P. Pellegrini already completed his Rule 32 proceeding. If Pellegrini were to fairly present these issues in a second Petition for Post-Conviction Relief, such presentation would be untimely. Moreover, these claims do not qualify for any of the timeliness exceptions:

> (d)   The person is being held in custody after the sentence imposed has expired;
> (e)   Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence . . . ;
> (f)   The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> (g)   There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> (h)   The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Rules 32.1 and 32.4(a), Ariz.R.Crim.P. Such a new petition, therefore, would be subject to summary dismissal. *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion). Moreover, Pellegrini would be precluded from raising these claims in a second Petition for Post-Conviction Relief. Rule 32.2(a), Ariz.R.Crim.P. These claims,

therefore, are procedurally defaulted.[2]  *Park v. California*, 202 F.3d 1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where prisoner has not raised his claim in the state courts and the time for doing so has expired).

*Cause and Prejudice Analysis*

As for Pellegrini's procedurally defaulted claims, federal habeas review is barred unless Pellegrini demonstrates "cause for the default and prejudice attributable thereto, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 749-750 (citations omitted; internal quotation marks omitted); *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998), *citing Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992) (generally, if a petitioner "has failed to develop material facts in state court proceedings, he or she must demonstrate adequate cause for his or her failure and actual prejudice resulting from that failure).  Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (citation omitted); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court).   Prejudice need not be addressed if a petitioner fails to show cause.  *Murray.*   To bring himself within the

---

[2]Because these claim are procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claims are of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claims are precluded pursuant to *Cassett*.  Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established.  *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004); *see e.g., State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (App. 1999) (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995) (Rule 32.4(a) was amended to "address potential abuse by defendants caused by the old rule's unlimited filing periods").

narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence[.]"   *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002), *citations omitted*.  "Actual innocence can be shown when a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"   *Sistrunk*, 292 F.3d at 673, *quoting Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Pellegrini has failed to show (1) cause – any impediments preventing Pellegrini from complying with Arizona's procedural rules, *Murray*, 477 U.S. at 488; (2) prejudice – any constitutional violation so basic as to infect Pellegrini's entire trial with error, *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), or (3) fundamental miscarriage of justice that no reasonable juror could find him guilty, *Schlup*, 513 U.S. at 327.  Pellegrini's procedural default cannot be excused.

Accordingly, IT IS ORDERED:

1.      The Motion for Extension of Time [Doc. # 21] is GRANTED;

2.      Pellegrini's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 habeas petition is DENIED;

3.      This matter is DISMISSED with prejudice, and;

4.      The Clerk of the Court shall enter judgment and shall then close its file in this matter.

DATED this 5th day of September, 2007.


_____
Cindy K. Jorgenson
United States District Judge